Your Honor, the first case of the afternoon called 2-12-24, Karen Johnson v. Utopia Tours, Inc. and Ryan Laffey. On behalf of the appellant, Mr. Philip J. Farina, on behalf of the athletes, Mr. Wayne E. Giampetro. Mr. Farina? May it please the Court, Mr. Giampetro. This appeal arises out of an order entered by Judge Ellison granting summary judgment in favor of the defendants on the question of duty. We believe that there was a legal duty in this case that arose out of certain representations made in the tour brochure of Utopia Tours. In other words, there is an assumed duty in this case. And that duty, in the words of the defendant in its brochure, was to provide a fully escorted tour, a tour that includes all transportation, providing expert guidance and handling every detail. This is a very broadly defined duty assumed by Utopia Tours. And we believe that this duty would, under the facts of this case, include providing safe access to restaurants for dinner the first night of the tour. So are you submitting then, Counsel, that what is said in the brochure created a duty? I believe so. I think that's an assumption of a duty. We have a brochure that my client testified in a deposition that she relied on, a brochure designed to get customers to go on this 16-day tour. And that if you assume certain duties through representations made in your brochure to get business, that under those circumstances you've created a duty for yourself. So tell me how you get around the Gellman case, where the Gellman case says, if I read it correctly, that you could have cause in fact and not have legal cause. How is this case any different than that case? Well, I think this case is, I think you get around the issue of legal cause by looking at the foreseeability of the event. And I think this case, in that regard, is closer to the case of Coles v. Jenkins, which we cite. And in that case it was a bicycle tour. And part of the design of the tour was that one day they were going to be on a very busy highway with a narrow shoulder. And this was warned of in their brochure in that case. And one of the bicyclists was hit by a driver who was immediately blind. And the court in that case said that if the jury finds that this tour was negligently designed by choosing their road, then it is foreseeable that this design was a legal cause. That it's foreseeable that a driver, whether he's legally blind or inattentive or perhaps intoxicated, might veer off and strike a bicyclist. So I think in this particular situation, what is foreseeable that we have a group of senior citizens that arrive at a hotel late, that it's nighttime by the time they check in to their rooms, and then are asked to go on their own to find a restaurant through an intersection that has a reputation of being a place of frequent accidents. That's foreseeable that an accident could happen, did happen in this case, and therefore putting the plaintiff in this position at that time of night to negotiate their particular intersection would be a legal cause of the accident. So you had other individuals who did indeed cross that street and didn't get hit by a car, correct? That is true. They were the lucky ones. And so you had, isn't the question whether it was reasonably foreseeable that a member of this tour group would decide to jaywalk, cross the highway without a signal? And she never asked any questions of the tour director, did she? Well, when she, when she, after she, no, because he wasn't there. Did she ever ask anyone at the hotel or behind the desk when she left, are there any restaurants in the area? When they first arrived, the hotel representative mentioned there's restaurants on the other side of Finley Road. In the hotel list that the tour company provided, they said there was a restaurant at the hotel. Correct. And that was wrong. They were wrong. So when my client, when my client left her room after checking in, Brian Laffey and the bus driver were not there. The bus wasn't even there. They had gone someplace. So now she and other members of the group were on their own. Did the trial court find that there was no duty or did the trial court find there was a duty but it wasn't breached because there was an intervening cause, that being the negligence of the driver? I don't think Judge Ellison talked, I don't think that the intervening cause argument, I don't think that was the basis of his decision. Towards the end of his order, he states that there was no duty because defendants didn't control the area and didn't have knowledge of any danger. So I think Judge Ellison's order was focused on, he didn't think there was a duty there. Counsel, you rely on some, extensively on cases from foreign jurisdictions. Yes. We have cases in the state of Illinois. Why should we follow the cases that you cite? Well, in my research of the case, and I hope it was sufficient, it seems that most of these tour operator cases are outside the state of Illinois. I'm not quite sure why that is. Maybe because we don't have a big tourism industry within Illinois. But I think, and I think this is true of the Peleze brief, most of the cases we cite that involve tour operators just tend to be out of state. There is a second district case cited by Peleze, the Jacob case, which I could go into on rebuttal, which I think is distinguishable. But I wish there were more Illinois cases against tour operators as opposed to maybe the travel agents. A tour operator is different from a travel agent. You said that the judge said that the defendant didn't control the air, which meant that the judge, if he determined there was a duty, wasn't the same duty that you claim existed, which related to all transportation, correct? I quite don't understand the question. Because you claim that there's a duty, it's an assumed duty, that had to do with providing all transportation. And then the judge says, according to you, that there was no duty because the defendants had no control over the Findlay Road traffic or area. So, to me, I've just heard what I thought was two duties. One was to provide all transportation, and the other was they weren't in control of Findlay Road. Now, if you can reconcile or explain how one fits into the other or is a lesser included duty of what you claim, I'd appreciate it. Because I'm having a little trouble understanding how his statement that relates to they didn't control the area relates to your claim that there was supposed to be transportation provided. I can't read Judge Ellison's mind other than what he wrote. And I think the duty here arises out of the particular facts of what happened that night. The bus, this is the first night of the tour. They had driven 500 miles. They get there late. By the time the people, there's no restaurant in the hotel, which is, the hotel list was incorrect. So, they check out of their room. They're on their own in the dark. And this is a senior citizen tour. I don't know that they check out of their room. To check out means to supposedly give your key back. Well, that's the wrong, that's correct. They put their luggage in their room and leave. Ryan Labby tells them, go out, have dinner, be back here at 9 o'clock because we're going to have a little party. And what we're saying is that under those particular facts, even though dinner was not included in that night, they should have provided transportation, given those facts and the kind of intersection they had to traverse. And my point is, is that if they fail to provide transportation, then that is the alleged duty that you're claiming that if it was breached and your client was injured, there would be approximately caused damages based upon the breach. Yes, either that or, as Ryan Labby testified, choose a hotel on the other side of Finley Road, which Ryan Labby said in his deposition, would have been a safer alternative. Rather than have senior citizens at that time of night wander through a relatively dangerous intersection that they were unfamiliar with. In fact, both Ryan Labby and the tour designer, Elaine Anderton, were unfamiliar with this intersection because neither of them had ever been there. But the tour had stated that Downers Grove, Comfort Inn, and the Pit, had they not? Yes, but nobody, well, the designer of the tour for Utopia, Elaine Anderton, she chose that Comfort Inn and said there was a restaurant there, but she had never been there. She had never been there. Ryan Labby had never been there. He was hired the night before the tour left and had a half-hour training session for a 16-day tour. So really, nobody connected with Utopia really knew the situation around that hotel, that intersection. And that goes to our argument that the itinerary, the tour itself, was negligently designed. And in support of that, we do cite Brian Labby's testimony in that regard. And of course, we have a retained expert, Howard Adler, who gets into that and is affidavit. I think that it comes down to the same question. I think the Lee case talks about it, the Gellman case talks about it. Was the defendant's negligence a material and substantial element in bringing about the injury? And if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct? So you have to prove that they should have foreseen that when they told all of these individuals, go out to dinner, that they should have reasonably foreseen that somebody may be hit by a car. I think that is true, and I would rely on the Coles case, the bicycle tour case that we cited in that regard. But again, that's out of state, isn't it? That is true. And we have the Gellman case in state, which is the semi-tractor trailer park. And again, the Gellman case talks about cause and fact and legal cause. Well, in the Gellman case, the court believed that the decedent would have crossed where she crossed under any circumstance because the decedent in that case apparently had walked by a crosswalk and just chose not to use it and then crossed in mid-block. And I think the basis of the court's decision was that there was a crosswalk that she walked by. Well, but there were crosswalks to the left and to the right where your client crossed. There was a crosswalk, but my client didn't walk by it, unlike the decedent in Gellman. And she testified that she and her friend Florence were walking towards the intersection to see if there was a crosswalk. They saw none, but before they got there, other members of the tour group were walking back towards it and say, hey, there's no crosswalk there. So they all decided to cross then where they crossed and where the accident happened. What's your position relative to a breach of duty if she had slipped and fallen in the motel parking lot on the way to Red Lobster? Well, I don't think there would be any duty there because a parking lot in and of itself... But she's not escorted. Well, but she had been in the parking lot earlier that day when she got off the bus. What about if she had slipped and fallen on the incline walking down to the road? I think there would be a case there, frankly, because if she were... What if she had slipped and fallen while she was crossing Finley Road? Well, I suppose it would depend what she might have slipped and fallen. I think the foreseeability factor specific to this case is being struck by a car in an intersection that was known for high incidence of traffic accidents. Now, if she had slipped and fallen on September, there wouldn't be an incident. But if she had slipped and fallen in a pothole, I don't know. There's no evidence that Finley Road was considered dangerous by the Downing Grove police because of potholes. There's no evidence of that. It is considered an unusually dangerous intersection by Downing Grove's police because of traffic accidents, whether people are driving fast or not paying attention. I don't think it's testimony related to people getting hit by cars so much as cars hitting other cars in the intersection between Finley Road and Roosevelt Road. That may be true, but if this is an intersection of high incidence of accidents because people are going fast or not paying attention, then it would equally apply to... Those factors could apply to hitting a pedestrian. But maybe not a lot of pedestrians cross that intersection. You would agree that the defendant is not a guarantor of your client's safety, correct? Of course. Of course we would agree. It is essentially your position that because the defendant was required to provide transportation, all transportation, it was therefore required to provide transportation from the Comfort Inn to a restaurant for the plaintiff's eating purposes, correct? Yes, especially under the particular facts of arriving late at night. And having failed to provide that transportation, it was reasonably foreseeable that what? That she would be hit by a vehicle walking across Finley? Walking across Finley, that particular intersection, as it was described by Officer Dokum in his deposition, as a place that's known to the Downing Grove Police as an intersection where there's a high incidence of accidents. There's no street lights there. It's dark. For whatever reason, the crosswalk is not readily visible. Now, do you think that the trial court disagreed with this syllogism, or do you think the trial court made a ruling based upon a different hypothecation? Well, I know what's said in the order. Judge Ellsworth talks about duty. He did mention jaywalking a few times, but I think it's unclear from his order whether jaywalking was the basis of his decision. But it must have been in his mind. But if my client is jaywalking, that in and of itself does not make her, as a matter of law, contributorily negligent, according to the Riley case. So I think, you know, that was on Judge Ellsworth's mind. It may be on a jury's mind, if ever we get that far in this case. But the jaywalking aspect of this, I think, is a question of my client's contributorily negligence. And that's the extent of it. Okay. I have no other questions. You'll have an opportunity to make rebuttals, sir. Thank you. Thank you, Your Honors. Good afternoon. May it please the Court. I'm Wayne Gianpietro. I represent the defendants, Utopia Tours and Brian Lappy. First of all, as to the brochure, you have to read the brochure as a whole if there is an attempt to use that as a basis for any duty. The brochure contains a disclaimer, which says, Utopia Tours is not responsible for any loss or damage of personal property or for injuries, expenses or damages whatsoever incurred or claimed by any tour member. So are you saying that Utopia could have committed a breach and they would have been immune because of this brochure? No. No. All right.  What I'm saying is the brochure really adds nothing in terms of duty that the law does not already recognize. Utopia Tours has a duty to inform its tour members of what it knows. It had no special knowledge that there was anything dangerous, anything unusually dangerous about this place. And, in fact, there was not. Well, haven't they, and Angin testified, that they had stayed, this tour group had stayed at this Downers Grove Comfort Inn before, several times I think is what her testimony was. I think that's right. So should they have known at that time that there was not a restaurant in that Comfort Inn? Well, they should have known there wasn't a restaurant. That doesn't mean that that means there's a dangerous situation. The fact is the restaurant's not here. It's across the street. Now, didn't Officer Finley testify that that area is the most accident prone in Illinois? For vehicles. For vehicles, not for pedestrians. There was specific testimony about it, and we specifically asked him, is there any pedestrian accidents here? He said, no, what we're talking about is a lot of vehicular accidents. So you don't believe that the agency or the tour agency should have had some knowledge of the danger of having senior citizens cross a four-lane highway to go get something to eat? Yes. There's nothing more dangerous about this highway than any other highway in the country. There's nothing unusual about this configuration. There's a crosswalk. It's marked. It's controlled by specific traffic signals with walk and don't walk. The plaintiff voluntarily chose not to use that crosswalk. There's nothing extraordinarily dangerous about this situation. In fact, she testified from where she tried to cross the street, she could see the stoplights. She couldn't see the crosswalk because there's a little bit of a curve in the road and it goes downward. She couldn't see the lines of the crosswalk, but she could see the traffic lights. Counsel said, well, other people told her that there wasn't a crosswalk there. Well, if that's an addition of a duty, they're the ones that ought to be liable, not the tour company. The tour company didn't say anything inappropriate or improper. And more importantly, there were cabs available. She could have taken a cab. She said, I didn't want to take a cab. I wanted to walk. She said, I saw, I was standing there in the road, I saw a car coming. I thought I could beat it across the street. Unfortunately, she was wrong. There is nothing unusual that any individual of any age, above the age of majority, would not know and would not appreciate about this situation. It's open, it's obvious, and it's something that anybody and everybody of normal sense and knowledge would know about. There's nothing unusual here. What the trial court did when it ruled the way it did. I'm sorry, Your Honor? What's your interpretation of what the trial court did? He said there was no duty. He said that Utopia Tours had no duty towards the plaintiff in this situation. And as the cases that we cite, I think both sides cite in the brief, that's an issue of law. It's whether there is a duty. There is, and as a matter of law, there is no duty to protect one, any person from their own misjudgment. They agreed to provide all transportation, and she needed to be transported from point A to point B. Why wouldn't there be a duty? The question then becomes whether there was a breach of that duty. I'm sorry, Your Honor. She said she didn't want it. The transportation was available. There were cabs. It was there. All she had to do was use it. Was that transportation provided by the tour company? Did the tour company pay for it and say, we have cabs available for you? No, Your Honor. It did not. But she didn't ask them to get her someplace, anyplace. Had the tour company been asked, we would be in a different situation. But they had no knowledge, and they didn't know what she was going to do. She specifically didn't ask anybody for transportation. In fact, she said she didn't want it. She affirmatively said, I wanted to walk to the restaurant. I didn't want any transportation from anybody. There is no general, I mean, the alternative would be to, in essence, have an escort for every individual member of the tour to make sure that they don't do something that could harm themselves. That, obviously, would make tours so prohibitively expensive that nobody would be able to afford to take them. I would refer the court to the decision of the Illinois Supreme Court in Springfield, excuse me, first Springfield Bank of Trust v. Gellman. It's on page 7 of our brief, where the Illinois Supreme Court said, and the context was slightly different, but not a whole lot. The decision to jaywalk, while undeniably tragic and regrettable, was entirely a plaintiff's own making. Defendants neither caused her to make that decision nor reasonably could have anticipated that decision as a likely consequence of their conduct. One simply does not follow from the other. Now, your opponent submits that this case differs from Gellman, and Gellman's decision made, Felpert's decision to jaywalk in that case, was of her own making. But in this case, he submits that Karen Johnson's decision to jaywalk was because it was where she was placed, in an area where there were no lights and in a hotel where there were no restaurants. So he's distinguishing that case based upon that. How do you respond to that? It's not distinguishable, Your Honor. There's nothing here about the facts of this case that forced Karen Johnson to do what she did. She had transportation available. If she had availed herself of it, she said she didn't want it. She voluntarily chose to go and cross the street, not at the light, not at the corner where traffic signals were available, but in the middle of the road when she knew there was traffic coming. And she voluntarily decided she's going to encounter that oncoming traffic because she thought she could get across the street faster than the car could get to her. I don't see how that can be anything that is caused by the defendant. There is no duty to provide a restaurant on the same side of the street as the hotel, especially since there's a way to get to the restaurant safely. I don't think the plaintiff claimed that. I thought the plaintiff claimed that you were to provide all transportation. Now, if the restaurant's on the same side of the road, maybe we're talking about a rickshaw or something like that to go between the motel and the restaurant. But if it's across the street, then again you're talking a cab or a bus. She didn't ask for it, Judge. There is no evidence that the defendant would have refused. I didn't say she didn't. I'm trying to point out to you that you're mixing your apples and oranges when you throw into the mix different duties that the plaintiffs aren't arguing about. The plaintiff's talking about a duty to provide transportation, and you come up with a different one. And then you say this duty doesn't exist. It probably doesn't because even if it did, it isn't the basis upon which the plaintiff is seeking relief in any event. So it's kind of a red herring. Well, I guess I'm having trouble trying to figure out what he claims the duty is because the defendant did not refuse to provide transportation. She didn't ask for it. She went off on her own without giving the defendant an opportunity to provide it. Even if she's not asking for transportation, is she not submitting that the tour is supposed to be, quote-unquote, fully escorted? Well, fully escorted doesn't mean that somebody has to take the plaintiff by the hand every place she goes. It was fully escorted to that it took her to every hotel where the tour stopped at. It took her or would have taken her to everything that was part of the itinerary and part of the sightseeing. She knew from the brochure and from the information that she was on her own for dinner that night. That was clearly stated that the tour did not provide dinner to her that evening. There was no surprise. This was something that she was told well, well in advance. And given the fact that it was her decision to go off and engage in risky behavior, certainly is, if nothing else, an independent intervening cause of her injuries. The Gallman case says that you can have cause in fact but not necessarily legal cause. Would you agree that this may have been cause in fact? No, I do not, Your Honor. I do not agree that this was cause in fact. There was a condition that was open and obvious to everyone. She could have asked for transportation. There is no evidence that the answer would have been no had she asked for it. And she said she knew there was transportation available but she didn't want it. I don't know what more you could have where a plaintiff goes off on their own and is now asking for somebody else to pay for the result of their own unfortunate judgment. I don't think it's at all foreseeable that someone will, without making any inquiry, without having any conversation with the tour, go off on their own, take a risky route when they know there's danger when she testified that she saw this. Do you know what the other people did with differing results, however? Everybody else did. Well, nobody else ran across the street in the middle that we know of. Wait a minute. Didn't the people crossing say to her, yeah, we crossed here too? So there was a group that crossed. No, no, no. That was not any testimony? She said she met people coming towards her and they said there was no crosswalk. There's no testimony that they said they crossed the street. Her testimony was they said there wasn't any crosswalk down there. Oh, I thought that some people in the tour informed her that they had already crossed at that spot. I don't believe so, Your Honor. And when she was lying on the road at that spot, there were people crossing the street at the same time. That was not the testimony? The only other person that crossed the street at the same time was the lady that was traveling with the plaintiff, Ms. Hammers. She did make it across the street. The two of them went together, and Ms. Hammers made it across to the other side. So it wasn't anybody's testimony in a deposition that while she was lying in the road, more people kept crossing at the same spot? I don't believe so, Your Honor. I certainly don't recall that. Getting back to my comment, you said it wasn't foreseeable that these things would take place, and you just indicated that there were at least two people that did the same thing at the same place, and one of them got hit and the other one didn't. I don't see how that makes it foreseeable that two people would go off and do something that really, in my judgment anyway, makes no sense. You don't see it's foreseeable that people would attempt to get from Comfort Inn to the Red Lobster? Not by crossing in the middle of the road. When there's a crosswalk available, I don't think anybody can presume that somebody will violate the law. That's what was going on here. The Illinois statute says you shouldn't cross, jaywalk, whether you agree whether that's a law that's enforceable as such. The point is everybody knows that it's dangerous to do that. But because you're jaywalking does not preclude you from recovery, does it, in every case? Not in every case, no. Not if that defendant is more negligent or is acting intentionally or more culpable than you are. Of course not, but that's not the case here, Your Honor. Does Gallman stand for the proposition that it's not foreseeable to presume or assume that people jaywalk? No. I think what Gallman stands for is it's an intervening cause. It was the plaintiff's own decision. It was her choice, her affirmative decision to make that that is an independent intervening cause. I think that's what Gallman stands for. Did Gallman discuss cause and fact but then determine it was not legal cause? Or did Gallman determine that it wasn't cause and fact either? Well, I don't think it discussed it in those terms. It said it wasn't foreseeable. It says nor could anyone have reasonably anticipated that decision, that is the decision to jaywalk and cross in the middle of the street in light of the previous conduct of the defendant, which is to have a hotel where there's not a restaurant on the premises. Gallman says clearly it's not foreseeable that somebody's going to go out and cross in the middle of the street and jaywalk. What if it had been a blue lobster? Would it have changed anything? No. I don't think it would have made any difference at all. Any other questions? Thank you, sir. You may sit down. Thank you, Your Honor. I just have to follow up after that. The first night of the tour when this accident happened, counsel, I believe, pointed out that dinner was not included. That's true, but the record shows that there were other nights on this tour where dinner was not included or it specifically stated in the itinerary that we would bring and place it on the bus. Why that wasn't done here, I don't know, but considering the facts of when they arrived and this particular intersection, our contention is that this goes to the negligent design of the tour issue, that transportation should have been provided, especially since they arrived late and it was dark and so forth. Was I reading the record incorrectly in this case? Was there deposition testimony that other people had crossed the same area? Yes. When my clients met this group of people who had walked to the corner and for some reason didn't see the crosswalk, these people walked back. They informed my client of this and then they started to cross at approximately the same place, Finley Road. They didn't cross en masse together. I think a few people had crossed ahead of my client and then my client and her friend Florence crossed in about the same place and that was when the accident happened. Counsel mentioned that my client thought she could beat a car and my client testified that when she had stopped in the median of Finley Road and was looking and in the distance, I think she said one or two blocks away, she did see the headlights of a car but did not think that was the car that hit her because it was too far away. She doesn't recall ever seeing the particular car that hit her. Counsel made reference that the cabs were available. Well, there's nothing in the record that indicates that when my client left the hotel and did not see the bus or Brian or the bus driver, that there were cabs parked in front of a Comfort Inn in Downers Grove. This is not like a hotel in downtown Chicago. I suppose she could have gone back into the hotel room and asked that a cab be called, but she didn't and she followed Brian's direction, which was basically go get dinner somewhere and then be back here at 930 for a little get-together party. So that's the extent of my rebuttal. I'd be happy to answer any further questions. I have nothing further. Do you want to elaborate on Paul's graft or small-mounted graft failure in this context? It's probably been a while since you've heard that. Well, you have to understand that my mind works in memories past, and Paul's graft is the concept that I'm dealing with here now. You mean the train station? Yes, and the fireworks and tips over the vending machine and so on and so forth. Judge Cardozo's opinion. I just told you everything I remember about Paul's graft. It was an approximate cause case. Well, this is a conundrum, I must admit. We will take the matter under advisement. We apologize for the absence of Justice Enoff, but she was unavoidably detained in New York City due to the hurricane. Thank you very much. Court is in recess.